## RAGAN & BUFFET *v.* H. M. AIKEN.

1. RAILROAD. *Franchises may be assigned. When.* The franchises to build or own and manage a railroad, and to take tolls thereon, are not necessarily corporate rights, and may be assigned ; but the franchise to form or be a corporation and act in a corporate capacity is legislative, and not the subject of sale or transfer except by some positive provision of statute law pointing out the mode of transfer.

2. SAME. *Chancery pleadings and practice.* The bill alleged that a particular railroad, with all its property, effects and franchises, was sold under the proceeding by the State against delinquent railroads, and subsequently re-sold by the purchaser to an individual named, and by him to the defendant, who had continued to operate the road under the charter of the original corporation, and had charged and received from the complainants excessive freight. *Held,* upon demurrer, that the defendant was not the corporation, and that the bill was properly filed against him as an individual.

3. SAME. *Rate for transportation.* By statute the railroad companies of this State are given the exclusive privilege to carry freight and passengers over their respective roads, " *provided* that the charge for transportation or conveyance shall not exceed 35 cents per 100 pounds on heavy articles, and 10 cents per cubic foot on articles of measurement, for every hundred miles, and five cents a mile for every passenger." *Held,* that the intention of the Legislature was to confer upon each company the right to charge, as a common carrier, for freight and passengers carried over its road, or any part of it ; that the intent was not to proportion the charges by any unit of distance, but to fix a maximum beyond which the company could not go, and to leave the tariff of charges, within that limit, to the company, subject to the rule of the common law that the charges should be reasonable, and to the regulating power of the courts and the Legislature.

4. SAME. *Common carrier. Rates of freight.* A common carrier is bound to carry at equal rates for all customers in like condition, but may discriminate in rates of freight between customers not in like condition, if the discrimination be fair and reasonable, and not inconsistent with the public interest.

39—VOL. 9.

5. SAME. *Same. May discriminate in rates of freight. When.* A common carrier may discriminate in favor of ¦persons living at a distance from the end of the route, where the object is to secure freight which would otherwise reach its destination by a different route, and other customers not in like condition will have no right of action because of the discrimination, if the charges made against them are reasonable.

---

FROM HAWKINS.

---

Appeal from the Chancery Court at Rogersville. H. C. SMITH, Ch.

SHIELDS & SHIELDS, KYLE & McDERMOTT and J. B. HEISKELL for complainants.

W. P. GILLENWATERS and A. D. HUFFMASTER for defendant.

COOPER, J., delivered the opinion of the court.

The chancellor sustained a demurrer to this bill, and the complainants appealed.

On February 27, 1852, the General Assembly of the State passed an act to charter the Rogersville & Jefferson Railroad Company as a corporation. By the ninth section of the act, it was provided that said railroad company should be governed by the provisions of the Nashville & Chattanooga Railroad charter, and should have the same rights and privileges, and be under the same penalties and restrictions as said company. By the fourteenth section of the act incorporating the Nashville & Chattanooga Railroad Company, it is provided that the charges for transportation on said road shall not exceed thirty-five (35) cents per

Ragan & Buffet *v.* Aiken.

hundred pounds on heavy articles, and ten (10) cents per cubic foot on articles of measurement, for every hundred miles, and five¹ (5) cents a mile for every passenger.

The Rogersville & Jefferson Railroad Company was organized under its charter, and built a road from Rogersville to a point on the line of the East Tennessee, Virginia & Georgia Railroad, a distance of fifteen miles, which it equipped and operated for several years by carrying freights and passengers as a common carrier. It had, however, received State aid under the act of February 11, 1852, and subsequent acts amendatory thereof, whereby a statutory lien or mortgage was created in favor of the State upon the entire road, stock, equipments, superstructure, franchises and property of the company, as security for the bonds of the State issued to the company, and the interest thereon. The company having failed to meet its obligations under the contract with the State, such proceedings were taken by the State against the company that, by order of court, the road, with all its property, effects and franchises, was, on the 20th of March, 1872, sold to the East Tennessee, Virginia & Georgia Railroad Company, and the sale was confirmed on November 18, 1873. On December 26, 1873, the purchaser sold and conveyed the road, with all its property, franchises and privileges, to W. P. Elliott, and, on September 12, 1877, Elliott sold and conveyed the same property to the defendant, Aiken, who has since operated the road under the charter.

The complainants were merchants in Rogersville, en-

gaged in buying and selling hardware, family groceries,. produce, implements of husbandry, etc., and have been so carrying on business since the 1st of January, 1879. During this period, they have been required by the defendant to pay as freight for articles carried on said road of fifteen miles from Rogersville to the East Ten-nessee, Virginia & Georgia road from twenty to twenty-five cents per hundred pounds on heavy articles (no articles of measurement having been shipped to them), and have paid him accordingly, the gross amount of their payments aggregating about $4,000. The com-plainants insist that, under the charter of the com-pany, the legal rate of freight for the length of said road would only be $5\frac{1}{4}$ cents per hundred pounds, and the main object of the bill is to recover the excess of payments over the legal rate of charge.

The bill further states that the defendant, as an inducement to other merchants in Lee county, Virginia, and Hancock county, Tennessee, to have their goods shipped to Rogersville, so as to pass over his road, has entered into a contract with those merchants not to charge them exceeding fifteen cents per hundred pounds on any and all articles for carriage on his road, and that large shipments have accordingly been made over the road to these merchants. The com-plainants allege that this discrimination is illegal, and ask the court to enjoin the defendant from so discrim-inating.

The demurrer raises the questions whether the de-fendant is liable to the suit individually instead of the corporation, and whether the charges of freight and

discrimination complained of are authorized by the charter of the Rogersville & Jefferson Railroad Company.

The bill alleges that the defendant is the owner of the road, operating it under the franchises of the charter of the Rogersville & Jefferson Railroad Company; that he required the complainants to pay the rates of freight charged, and that the payments were made to him. It does not allege that the original corporation is in existence or running the road under its charter. The first ground of demurrer is, therefore, clearly bad, unless, as matter of law, the facts stated in relation to the sale of the road, with its property and franchises, under the decree of the court, and the subsequent sales by the purchaser to Elliott, and by Elliott to the defendant, made him a body politic and corporate under the name and style of the Rogersville & Jefferson Railroad Company. But the several sales, according to the statements of the bill, were merely of the road, its property and franchises. The franchises thus sold would be such as appertain to the use of the property, and without which the road would be of little value: *Morgan* v. *Louisiana,* 93 U. S., 217. The franchise to form a corporation and act in a corporate capacity means the power to charter a new corporation by appointing the corporators. Such a power is legislative, and cannot be presumed from a mere authority to sell the property and franchises of an existing corporation: *Meyer* v. *Johnson,* 53 Ala., 237; *State* v. *Sherman,* 22 Ohio St., 428; *Smith* v. *Gower,* 2 Duer., 17; *Wilson* v. *Gaines,* 3

Tenn. Ch., 602. The franchises to build or own and manage a railroad, and to take tolls thereon, are not necessarily corporate rights; they are capable of existing in and being enjoyed by natural persons, and there is nothing in their nature inconsistent with their being assignable. The franchise to be a corporation is not the subject of sale and transfer, unless by some positive provision of statute law, pointing out the mode in which the transfer may be made: *Hall* v. *Sullivan Railway Company*, 21 Law Rep., 138. If, in fact, there was a valid sale of the right to be a corporation, or if the defendant has become a body politic and corporate, it may be shown by proper pleading. The bill itself does not show that the defendant is acting otherwise than as an individual.

The second ground of demurrer raises the question as to the right of the defendant to demand and take from the complainant as freight on heavy articles from twenty to twenty-five cents per hundred pounds for carriage over the road which is only fifteen miles long. The bill alleges that the defendant has been and is operating the road under the provisions of the charter of the Rogersville & Jefferson Railroad Company. In this view, the defendant is bound by the provisions of the charter. Those provisions are that the charges for transportation shall not exceed 35 cents per hundred pounds on heavy articles for every hundred miles. And the question is whether the statute merely fixes a maximum charge for every hundred miles, leaving the company at liberty to establish the

rates for shorter distances within the maximum, or establishes a rate for all distances.

The statute which regulates the freight charges in this State is the act of 1845, ch. 1, sec. 14, being the act chartering the Nashville & Chattanooga Railroad Company. That section confers upon the company the exclusive privilege to carry freight and passengers over the road, and adds: "Provided, that the charge for transportation or conveyance shall not exceed 35 cents per hundred pounds on heavy articles, and 10 cents per cubic foot on articles of measurement for every hundred miles, and 5 cents a mile for every passenger; and provided also, that the said company may, when they see fit, farm out their right of transportation on said road subject to the rate above mentioned." Looking to the general intent of the act incorporating a railroad company, and giving the language of the particular clause a reasonable construction, it can scarcely be doubted that the Legislature intended to confer upon the company the right to charge, as a common carrier, for freight and passengers carried over its road, or any part of it. The rule in the construction of charters of corporations unquestionably is, in case of ambiguity, to give the public the benefit of the doubt: *Barrett* v. *Stocton Railway Company*, 2 Man. & G., 134; 7 *Id.*, 870; *Proprietors of the Stourbridge Canal* v. *Wheeley*, 2 B. & Ad., 793; *Camden etc., Railroad Company* v. *Briggs*, 22 N. J. L., 623. But the rule in this as in all other cases, is not to be astute in finding an ambiguity, and to give the language a fair construction, in the light of surround-

ing circumstances, to ascertain the legislative intent. If inclined to be literal, the court might say, although not contended for in argument, that there is no provision for a charge for freight at all except upon a hundred pounds for a hundred miles. But as this construction would be manifestly unjust for roads of over one hundred miles, would deprive all roads of less length of any right of freight whatever, and is not fairly deducible from the language used, it is clearly inadmissible.

The consideration for the statutory toll or freight, which a railroad company is authorized to take, is not merely the transportation over the road, but the services performed, accommodation afforded, and expense and risk incurred in and about the running, loading, unloading, and delivering the goods: *Pegler* v. *Monmouthshire Railroad & Canal Company*, 6. H. & N., 644. And as these services, etc., are the same on like shipments for short or for long distances, it is obvious that the charge for short distances may be larger than for long distances, and yet reasonable. Accordingly, when the Legislature has undertaken to regulate the details of the charges for carriage, provision has generally been made for a higher charge for shorter distances: *State ex rel.* v. *M. & M. Railroad Company*, 59 Ala., 321; *Texas Express Company* v. *Texas, etc., Railroad Company*, 6 Fed. Rep., 426. In Alabama, the additional charge is not exceeding 50 cents more than the rate charged for the same description of goods over the whole line of the road. The Texas statute allows railroad companies to charge and receive not

exceeding the rate of 50 cents per hundred pounds per hundred miles for the transportation of freight, and when the distance is fifty miles or less, the charge shall not exceed 30 cents per hundred pounds.  The English statutes make special provisions for short distances.

Railroad companies, as *quasi* public corporations exercising franchises granted in consideration of accommodations afforded the public, are required and may be compelled by the courts to afford reasonable and impartial facilities of transportation.  Their charges, when not regulated by charter or by statute, must be reasonable, and the courts will determine whether their charges are reasonable: *Munn* v. *Illinois,* 94 U. S., 113, 133: *Chicago* v. *Iowa,* 94 U. S., 155; *Reg.* v. *Grand Junction Co.,* 4 A. & El., 16.  If only a maximum limit of charge be fixed by charter, the reasonableness of other charges within the limit may be tested in the courts.  If the charge for each service be fixed by law, or if the intention of the Legislature is clear to only allow certain specified fares or tolls, leaving other cases unprovided for, the company must abide by its contract.

The statutory provision now under consideration starts out with conferring upon each railroad company entitled to its benefits, "the exclusive privilege to carry freight and passengers" over its road.  Each company thereby becomes a common carrier, presumably authorized to demand and receive reasonable compensation for the services which, as a common carrier, it is required to perform.  This presumption is made a certainty by the following clause undertaking, although in very gen-

eral language, to legislate in regard to those charges. Clearly, as we have seen, it was not intended to confine the right to charge the stipulated freight on heavy articles to the only case specified, namely, on one hundred pounds for one hundred miles. The statute does not, therefore, fall in that class of legislation where the intention is to only allow certain specified tolls, leaving all other cases of transportation unprovided for. In this view the statute was either intended to establish a rate for intermediate distances, and weights in proportion to the amount specified, or to establish a maximum beyond which the company could not go, but within which it might make a tariff of charges dependent for its validity upon its being reasonable in any particular instance. The complainants contend for the first of these constructions, the defendant for the other.

The language of the act, it will be noticed, does not in terms say that the charge for other distances and weights than those mentioned, shall be at the same rate as the latter, nor does it, as in the case of a passenger, fix a unit of distance sufficiently small to afford a mode of measurement or proportion for other cases. If, too, we undertake to proportion the charge for short distances and smaller weights by the charge specified, we find that it leads to precisely the same results, where the road is less than a hundred miles, that the construction of the statute which we have discarded, would lead to, namely, that for roads of a certain shortness, the road before us being a striking illustration, there would be no compensation for the

services required to be performed. And even the proportion on long roads of small parcels, whether charged by weight or measurement, would be infinitesimal. Thus, the statute allows on one hundred pounds for one hundred miles, 35 cents, and the proportion of charge on one pound for one hundred miles would be $\frac{7}{20}$ of one cent; and one pound for one mile the one hundredth part of $\frac{7}{20}$ of one cent. The charge for one hundred pounds on the whole length of defendant's road would be about 5 cents, and for one pound $\frac{1}{20}$ of one cent. It cannot be supposed that the Legislature intended such a result, unless it has said so, or used language which fairly requires such a construction. In the absence of any words fixing a smaller unit, or indicating a proportion, the obvious and natural inference would be that the Legislature had in mind only the unit of one hundred miles and one hundred pounds, and intended merely to designate a maximum of charge.

The case of *Knox* v. *Railroad Company*, 5 S. C., 22, so much relied on by the counsel of complainants, is not in conflict with these views. The statute of South Carolina, construed in that case, authorized the company to charge "for the transportation of goods by weight not exceeding 50 cents per hundred pounds per hundred miles." The court, whether correctly or not it is unnecessary to enquire, construed the language as plainly requiring that the charge for less than a hundred miles should be in the proportion of the charge for the distance specified in the statute. So, where a statute of Alabama provided that the company might "for transportation of local freight demand

and receive not exceeding 50 cents more than the rate
charged for the same description of freight over the
whole line of its road," the Supreme Court of the
State held that "rate" was the emphatic word of the
sentence, and was employed in the sense of proportion;
and that the 50 cents allowed was in addition to the
rate per mile of the charge over the whole road:
*State ex rel.* v. *M. & M. Railroad Company*, 59 Ala.,
321; *M. & M. Railroad Company* v. *Sturm*, 61 Ala.,
589. Our statute is that the charge shall not exceed
35 cents per hundred pounds for every hundred miles.
The courts of South Carolina and Alabama admit the
hardship of the construction of their statutes upon the
railroad companies, but felt themselves constrained to
adopt it because the language used showed a legisla-
tive intent that the charges should be proportioned.
We are of opinion that no such intent appears in the
language of our statute; that the object was to fix
a maximum charge beyond which the companies could
not go, and to leave the tariff of charges, within that
limit, to the companies, subject to the rules of the com-
mon law, and the regulating power of the courts, and
the Legislature. The second ground of demurrer, is,
therefore, well taken.

The third ground of demurrer is that the facts
stated in the bill do not show a case of improper
discrimination within the meaning of the franchises
under which the defendant is operating his road. The
facts are that the defendant, to induce merchants in
Lee county, Virginia, and Hancock county, Tennessee,
to ship over his road, instead of taking a different

route, has entered into a contract with them not to charge exceeding 15 cents per hundred pounds on their goods. And the question is whether the defendant can make such a contract, under the circumstances stated.

The English authorities hold that at common law the common carrier is not bound to carry at equal rates for all customers in like condition. The authorities are collected in *McDuffee* v. *Portland & Rochester Railroad*, 52 N. H., 430, and in 3 Am. & Eng. R. Cas., 602. In this country, the courts have generally held otherwise, and that statutes prohibiting discrimination are merely declaratory of the common law: *Sinking Fund Cases*, 99 U. S., 719; *Messenger* v. *Pennsylvania Railroad Company*, 36 N. J. L., 407, 531. Discrimination in rates of freight, if fair and reasonable, and founded on grounds consistent with the public interest, are allowable: *Hersh* v. *Northern, etc., Railroad Company*, 74 Pa. St., 181; *Chicago, etc., Railroad Company* v. *People*, 67 Ill., 11; *Fitchburg Railroad Company* v. *Gage*, 12 Gray, 393. The important point to every freighter is that the charge shall be reasonable, and a right of action will not exist in favor of any one unless it be shown that unreasonable inequality had been made to his detriment. A reasonable price paid by such a party is not made unreasonable by a less price paid by others. Or, as said by Crompton, J., to the plaintiff, upon the trial of such a suit: " The charging another party too little is not charging you too much": *Garten* v. *B. & E. Railroad Company*, 1 B. & S., 112, 154, 165; *McDuffee* v.

*Portland & Rochester Railroad,* 52 N. H., 430. In determining whether a company has given undue preference to a particular person, the court may look to the interests of the company: *Ransome* v. *Eastern Counties Railway,* 1 C. B. N. S., 437; 1 *Id.,* 135.

In other words, if the charge on the goods of the party complaining is reasonable, and such as the company would be required to adhere to as to all persons in like condition, it may, nevertheless, lower the charge of another person if it be to the advantage of the company, not inconsistent with the public interest, and based on a sufficient reason. It is obvious that the intention of the defendant, in this instance, was not to discriminate against the complainants in favor of any person of the same place, and in the same condition. His object was to get business for his road from persons at a distance from its terminus, which otherwise would reach their destination by a different route. Under these circumstances, we cannot see that the contracts complained of are against public policy, or that the complainants have been damaged, if the charges on their goods were reasonable. The bill contains no allegation that the charges made against, and paid by the complainants were unreasonable. Without such an averment, there has been no damage. The third ground of demurrer was, therefore, well taken.

Affirm the decree with costs.